JAMES MULLEN, Ex'r, v. SARAH D. HELDERMAN.

*Wills—Evidence.*

1. On trial of an issue *devisavit vel non*, the caveators alleged that the wife of deceased exerted undue influence over him, and thereby procured the making of the will in tho sole interest of herself and her children ; *Held* competent to show that no foundation existed for the exclusion of one class of testator's children from participation in the estate.

2. And evidence of a conversation between the wife and a witness after the making of the will and on the day of testator's death, is also com-

petent to show a continued influence over him up to his death ; nor can her subsequent dissent to the will and renunciation as executrix have the effect to deprive the caveators of the benefit of this testimony.

3. The other exceptions to the evidence in this case tending to show undue influence, are untenable.

ISSUE of *devisavit vel non* tried at Fall term, 1881, of LINCOLN Superior Court, before *Avery J.*

Plaintiff appealed.

*Messrs. Hoke & Hoke* and *Battle & Mordecai,* for plaintiff.

*Messrs. Schenck & Cobb, Bynum & Grier* and *Fowle & Snow,* for defendant.

SMITH, C. J. Upon the propounding of the script purporting to be the will of Valentine Helderman for probate, before the probate judge, by James Mullen, the executor therein nominated, Sarah F. Helderman, the associate executrix and surviving wife of the deceased, renounced her said office and caused her dissent to the alleged will to be entered of record. Thereupon the heirs at law and next of kin appeared and filed their *caveat* thereto, and the cause was transferred to the superior court, where an issue was prepared and submitted to the jury in these words :

Is the paper writing, or any part thereof, and if so what part, the last will and testament of Valentine Helderman, deceased ?

Upon the trial, and after the testimony was heard, the proof of formal execution and sufficient mental capacity in the deceased was not controverted, but conceded by the contestants, who resisted the probate upon the ground of undue influence exerted over the mind and volition of the deceased, by his wife, in procuring the making the instrument in the sole interest of herself and her own children, to the exclusion of the children of the deceased by a former marriage, and in the impairment of that freedom essential to the validity of a dispositive testamentary act.

It appeared in evidence that eight children were born of the first wife, and that soon after her death, which occurred near the close of the late civil war, the deceased, then sixty years old, intermarried with the defendant, Sarah D., who had then attained the age of twenty. There were four children, the fruit of the second marriage, with an interval of two and a half years between the birth of the youngest, of the first and oldest of the last marriage.

In the spring of 1880 the deceased was striken with fever, and from that time gradually declined until his death in July of the same year.

The will was written by the executor and signed by the testator, then passed 74 years of age, on June 29th, a little more than three weeks before.

The executor on his examination in support of the will, among other things stated that the deceased assigned as his reason for giving his property to the last children, that he had paid money for the others and some of them had tried to break him up.

Frank Helderman, the oldest of the children, introduced by the caveators, testified that during his minority he worked with his father upon the old farm, had never received from him any property and had not tried to break him up. He was then asked at what time his father bought the land devised in the will. To this, objection was made and overruled, and the witness answered that it was bought sometime between the years 1850 and 1858 and that himself, his brother Robert, and sister Ann were then in the service of their father. The first exception is to the admission of this testimony.

The three next exceptions are to the reception of evidence of the personal relations and intercourse between the deceased and his wife, to her harsh conduct and violence towards the older children and especially towards Rebecca, the youngest of the class, and at the trial but 18 years of

age, in the presence of the father and his submission to such treatment, introduced to show the controlling influence and authority possessed and exercised over the deceased and the entire household. These acts it is needless to recite with greater particularity, since their force and effect belong exclusively to the consideration of the jury.

The fourth exception is to the proofs offered of the wife's repeated efforts to induce the deceased to make his will, and give his property wholly to her children.

The fifth exception is to the testimony of what transpired at the house on the night of the confinement of the said Sarah D., when one Ballard was seen at the bed-side, smoothing her hair and taking other improper familiarities, while the deceased sat at the fireside in the same room troubled and wringing his hands without the utterance of a word in remonstrance.

The sixth and last exception is to proof of declarations of the wife on the evening of the night of his decease. A witness testified to her calling him to the kitchen and there saying, "I suppose you heard about the will. When they saw Mullen coming, they tried to run me out of the house but I guess I seed to it. I am an old coon." And again being asked about the condition of the deceased, she replied "he is sinking fast," adding that she had inquired of the attending physician if her husband was going to die, and upon his answering "I advise him to fix up his affairs," said, "I went back and had things fixed up."

We think it was not inadmissible in answer to the reason given for the exclusion of one class of the testator's children from any participation in his estate, except in the paltry sums to each which add indignity to wrong and which indicate a hostile feeling towards them, to show that no foundation for such exclusion existed, and the natural parental sentiment had been perverted, if he used the language imputed to him, or the misrepresentation of his meaning by

the executor. It was competent as impeaching if not as original evidence. But if it were irrelevant, unless its admission was calculated to mislead, or may have misled the jury, this would not constitute an error fatal to the verdict.

The testimony covered by the three next exceptions is so clearly pertinent to the inquiry as to the possession of a controlling influence and its unresisted exercise over the deceased's volition and acts, and her temper and hostile disposition developed in acts and words towards her stepchildren, and resulting, as the contestants insist, in the unnatural disinheriting of a part of his own blood, and from which evidence the jury declare the vitiating influence, that no suggestions can add force to the argument contained in the statement of the proposition. The proof of the improper liberties and indecent behavior of the stranger at the bed-side of the wife, and the anguish which it seemed to have wrung from an enfeebled and helpless old man, was forcible and direct upon the over-mastered and unresisting temper of the deceased, and the objection to it is wholly untenable.

The last and remaining exception is to the reception of the conversation between the wife and one Cleminger, and her declarations to him after the making of the will, and on the day of the testator's death. The script offered for probate gives the entire estate, real and personal, to the wife "so long as she remains a widow," restricting her "to take a child's part" in the event of marriage, with remainder at her death or marriage to be equally divided among her four children named, and with a general power in her to dispose of such parts as she may choose in payment of debts. It further provides that when the estate in remainder is divided among them, the eight children of his first marriage (one being dead and represented by issue) shall

have, three of them each $2.50, one of them $1.25 and the others $1 severally.

The said Sarah F. by her dissent surrenders all rights devised under the will and, thus claiming only as in case of an intestacy, becomes no party to the present contest, and personally has no pecuniary interest in the determination of the issue. But she had such, and a predominating interest at the time when the declarations were made. It is through her persevering efforts and by means of her self-assumed agency for all that, as the contestants insist, the will was put in its present form expressing her own instead of the volition of the deceased, and for their common benefit. The same vitiating influence infects and pervades all the dispositions which it contains, and, if it exists as to one, is fatal to all the others. But for the dissent, it would be the common source of title to each beneficiary still.

Again, the introduction of the declarations may be defended upon the same ground as those proved to have been made about and before the time of executing the instrument, as showing a continued exercise of influence up to the time of its consummation by death. It was not a finished and effectual act of disposal until that event, and was meanwhile capable of being revoked. As the influence was used or may have been used in bringing the will into existence, so was it necessary to be kept up until it became an operative and irrevocable conveyance. The declarations were more than narrative; they attach to and become part of the fact, in furtherance of the ultimate purpose of securing the property to herself and others, made *dum fervet opus*, and as evidence, are supported by considerations as strong as those that admit declarations of a former period. If its effect would be to annul the gifts to the wife, so should it annul the gifts to others procured by one and the same illegal interference, and inseparably united as the offspring of a common origin.

Again, it may admit of question whether the dissent and renunciation after the work is done, can be allowed to prejudice the rights of the caveators to the introduction of such testimony as would otherwise have been competent, and was competent when the testator died. If so, it might open wide the door to fraud and prevent its discovery and repression.

But we prefer to sustain the ruling upon the ground of identity of interest among the beneficiaries and its common origin in an act by which that of each is secured, and when the mother bears to her children a relation not unlike that of agent to principal, and admitting the rule that when the latter claims the benefit of what the former has done without previous authority, he must submit to the conditions and attending incidents of the act itself.

There is no error, and this will be certified.

No error.                                   Affirmed.