**BURGESS et al. v. SYLVESTER et ux.**

No. 5587.

Court of Civil Appeals of Texas. Amarillo.

Jan. 17, 1944.

Rehearing Denied Feb. 7, 1944.

Sam J. Dotson, of Longview, Jesse Owens, of Austin, and R. D. L. Killough, of Vernon, for appellants.

Storey, Storey & Donaghey, of Vernon, for appellees.

HEARE, Justice.

This is a will contest and the parties will be designated as proponents and contestant. T. Bunker, a resident of Wilbarger County, died January 26, 1943, leaving surviving him one child, Mrs. Lizzie Burgess, who, joined by her husband, J. B. Burgess, contests the probate of an instrument dated November 9, 1936, as the last will and testament of T. Bunker, deceased, alleging testamentary incapacity and undue influence.

In this will, the testator named Frank Sylvester and wife, Louise Sylvester, and

Mrs. Lizzie Burgess as beneficiaries and appointed Mrs. Lizzie Burgess independent executrix. The Sylvesters, as proponents, offered the will for probate, alleging the refusal of the executrix so to do. On hearing before the probate judge of Wilbarger County the instrument was admitted to probate and contestant appealed to the district court. A trial there resulted in a jury finding that T. Bunker, at the time he executed the will, did have testamentary capacity but that he executed the same under the undue influence of Frank Sylvester and wife, Louise Sylvester. Contestant filed motion for a judgment on the verdict of the jury that would deny the admission of the instrument to probate as a will, and proponents filed motion for the court to disregard the finding of the jury on the issue of undue influence and for judgment admitting the will to probate. After notice and hearing on the motions, that of the proponents was granted and judgment was entered admitting the will to probate. This judgment was entered on the last day of the term of court and no motion for new trial was filed.

Contestant predicates her appeal on twelve points which may be grouped and disposed of under five heads, namely, (1) comment of the trial court and his ruling on argument of counsel for contestant, (2) the action of the trial court in disregarding the findings of the jury on the issue of undue influence and his refusal to grant contestant's motion for judgment, (3) withdrawal from the jury consideration of certain declarations by testator, (4) refusal of the trial court to permit contestant to prove testator's physical condition in 1942, and (5) the refusal of the trial court to submit to the jury an issue as to whether the provision in the will in favor of the Sylvesters was a contract for conveyance.

Bunker was shown to have been a pioneer of Wilbarger County and married to Catherine Kempf under marriage license from Clay County in 1884. They had two children, one dying in infancy, and Mrs. Bunker died in 1926. The Sylvesters were in no wise related to the testator. Mrs. Burgess, the only surviving child, had been twice married, bearing several children (grandchildren of the testator), the number not being revealed by the record.

The testator, at death, held either separate ownership of, or community interest in (and we express no opinion as to which), a half section of land in Wilbarger County, a residence, and a rent house in Vernon. Further than this, the extent of his estate is not shown. Patent to the half section was from the State of Texas to T. Bunker, dated July 18, 1902, and recited that the land had been purchased and fully paid for in accordance with an Act approved April 1, 1887.

The will in question was drawn by Ed L. Gossett, who at the time of the drawing of the will was a practising lawyer and district attorney at Vernon. By the terms of the will, all former wills were revoked, and testator further recited: "I hereby specifically revoke a will made by me on November 24, 1931, and have heretofore revoked a prior will made by me on December 14, 1927, and I have destroyed both such wills with the intent that they be absolutely and wholly revoked."

That part of the will pertaining to proponents is as follows: "I hereby give and bequeath to my good friends Frank Sylvester and his wife, Louise Sylvester, jointly, to be their community property, all of the N. E. One-Fourth (1/4) of Section Twenty-Two (22), of Block Nine (9), of the H. & T. C. Ry. Co. Surveys in Wilbarger County, Texas, being the property upon which they now reside. This conveyance is subject, however, to the payment by Frank Sylvester and wife, Louise Sylvester, of the sum of $3,000.00, such payment to be made to my daughter Lizzie Burgess or to her heirs, said devisees shall pay the sum of $150.00 per year for a period of twenty (20) years, without interest, the first payment to be made on or before the first day of January following my death and subsequent payments to be made on or before the first day of succeeding Januaries until the sum of $3,000.00 shall have been paid. Devisees may pay all or any part of this amount at any sooner period or periods than herein specified if they so desire."

The will then provided that after the payment of debts and after the satisfaction of the bequest "to my good friends Frank Sylvester and wife Louise Sylvester," the remainder of the estate, both real and personal, should pass to the testator's only daughter, Lizzie Burgess, without restriction.

The record shows that the testator was about eighty years of age at the time he executed the will in question; that he had suffered from an attack of influenza in 1924; that he was residing in his own home

in Vernon; that the Sylvesters had, since 1934, resided as tenants on the northeast quarter, being one of the quarter sections comprising the half section above referred to, and that contestant and her husband were farming the other quarter, paying testator rent; that Frank Sylvester had, for the past several years prior to testator's death, handled the matter of farm rents for testator and assisted him with his income tax returns; that this northeast quarter section, which was farmed by proponents, was worth approximately $85 per acre at the date of the will. The value of the remainder of the estate was not shown but it can be inferred from the record that the other quarter section was of approximately the same value.

We now discuss the first three points raised by contestant. Her counsel was arguing to the jury that contestant owned one-half interest in the property as a matter of law and that testator was attempting to give the entire interest to Frank Sylvester and wife when, in fact, he owned only one-half interest and Mrs. Burgess owned the other half. This argument was in support of the contention of testamentary incapacity. Objection was made to the argument on the ground that there was no evidence to show Mrs. Burgess owned one half of the land, and the court, in sustaining the objection, made the observation to the attorneys, in the hearing of, but not to, the jury that he, the court, could not tell from the evidence whether the land in question was separate property or community property. Practically the same occurrence took place while each of contestant's two arguing counsel was addressing the jury.

Contestant contends that such ruling unduly limited her counsel's argument to the jury and that the remarks by the court in the presence and hearing of the jury amounted to a comment on the weight of the evidence. Contestant's Bill of Exception No. One, on which her first point of error is predicated, shows that contestant excepted to the statement and ruling of the court concerning the argument of her counsel, Mr. Owens, as "being contrary to the evidence in the case." That the remarks constituted a comment on the weight of the evidence was not given as a ground for exception. As qualified by the court, contestant's Bill of Exception No. Two, on which her second point of error is predicated, shows that exception was taken

to the ruling and remarks of the court concerning part of the argument of Mr. Dotson, counsel for contestant, on the grounds that the statement of the court was contrary to the evidence in the case and the limitation put upon the argument of contestant's attorney was "prejudicial to the contestant and said statements and ruling by the court are on the weight of the evidence." This bill shows that counsel was permitted to, and did, argue to the jury that in his opinion, based upon the evidence, the property was community property.

Contestant cannot now complain that statements made by the court in connection with his ruling on Mr. Owens' argument were on the weight of the evidence, because no such ground for exception was assigned at the time exception was taken. Nor did contestant request the court to instruct the jury not to consider the court's remarks made in connection with either of said rulings. If the remarks had been of such a nature that an instruction could not cure the harm, then it would not have been necessary to request such instruction, nor would it have been necessary to assign a reason for exception to the remarks. Southland Greyhound Lines v. Matthews, Tex.Civ.App., 74 S.W.2d 713. But the statement of the court was in the nature of a conclusion of law concerning title and concerning a collateral issue far removed from the main issues in the case, and was not any positive statement that the evidence showed the property was separate property or community property. In our opinion, the error, if any, was harmless or at least it could have been cured by a court instruction, which was not requested by contestant and the error, if any, was therefore waived. Furthermore, the statement of the court that he could not determine whether the property was separate or community, if objectionable, might have been appropriately excepted to by either side; therefore, there was no error. Jaffe v. Deckard, Tex.Civ.App., 261 S.W. 390, writ refused.

With reference to the limitation put on the argument of counsel, it is our view, and we so hold, that in the face of the objection raised, the court correctly limited counsel to drawing his own inferences and conclusions concerning the separate or community character of the property. For the court to have ruled otherwise would have amounted to an affirmance by him

that the evidence did show without question that the property was community. And well might the trial court be uncertain. While the patent and the Act of 1887 authorizing the purchase of the land by testator each carried a date subsequent to the date of T. Bunker's marriage to Mrs. Burgess' mother, yet the contestant herself revealed under oath to the court, out of the presence of the jury, that she had in her possession an unprobated will of her mother which, by its terms, gave the land in question to T. Bunker. Although more than four years had elapsed since the death of her mother, yet there are some circumstances under which a will may be admitted to probate more than four years after the death of the testator. Article 3326, R.C. S.1925. While this evidence of the mother's will was only before the court and not before the jury, yet we feel that under the circumstances the court was justified in declining to make a positive ruling on a collateral issue to the effect that the property was community property, and properly limited counsel to his own conclusions, based on the evidence before the jury, concerning the character of the property in question.

For the reasons given, contestant's first, second, and third points of error are overruled.

By the fourth, fifth, and sixth points of error, contestant seeks reversal of the trial court's action in disregarding the finding of the jury that the testator was acting under undue influence of Frank Sylvester and wife at the time he executed the will and in refusing to grant contestant's motion for judgment in her favor on the verdict of the jury. The finding of the jury on testamentary capacity is not attacked, either in contestant's motion for judgment or by any point of error in the brief. The question for review is therefore limited to the issue of undue influence and the court's handling of the jury verdict thereon.

Certain general rules of law have been announced by the courts governing the issue of undue influence. The most helpful recent opinion is the case of Long v. Long, 133 Tex. 96, 125 S.W.2d 1034, where the Supreme Court, speaking through Justice Critz, announces seven general rules of law affecting the issue of undue influence in connection with the making of a will. In the interest of brevity of opinion, we do not repeat those rules but refer to them as beacon lights for guidance in a case of this character. To them can be added other well-established rules applicable to the instant case.

Undue influence must be exercised at the time of making the will, and the will must result therefrom. Rounds v. Coleman, Tex.Civ.App., 189 S.W. 1086; Cloudt v. Hutcherson, Tex.Civ.App., 175 S.W.2d 643, 653.

A will cannot be set aside on proof of facts which at most do no more than show an opportunity to exercise undue influence which may have existed or raise a bare suspicion that such influence may have been used. Rounds v. Coleman, supra, and authorities cited, page 1090 of 189 S.W. See, also, Cameron v. Houston Land & Trust Co., Tex.Civ.App., 175 S.W.2d 468, 470, and authorities there cited.

As stated by Justice Critz in Long v. Long, supra, no two cases involving undue influence are alike and each case must stand on its own bottom as to the legal sufficiency of the facts proved. In making application of these rules to the case at bar, we now review the evidence offered pertaining to the issue and view it in the light most favorable to contestant.

At the outset, we find a will which leaves a substantial, but not a major, portion of the estate to parties not related to testator. The only child of testator receives the remainder of the estate. Because testator deviates from the natural course of handing down property, the will can be said to be an unnatural will—not shockingly so, but at least to the extent of several thousand dollars' worth of property.

At this point we observe that the existence of an unnatural will alone does not establish undue influence. It is a circumstance to be considered but, standing alone, it is not sufficient to establish the ultimate fact. It is fallacious and circuitous reasoning to say that there was undue influence because the will was unnatural, and the will was unnatural because there was undue influence. Likewise, it is faulty logic to say that some unnatural wills are the result of undue influence; this is an unnatural will; therefore, it is the result of undue influence.

Ed L. Gossett, who the record reveals was then a practising lawyer in Vernon holding the office of district attorney and now a member of Congress

from that district, testified by deposition that Mr. Bunker came and talked to him several times about the will; that he got full instructions with reference to the drafting of the will from Mr. Bunker and no one else; that no one discussed the will or its preparation with him except Mr. Bunker; that after receiving instructions from Mr. Bunker concerning the will, he drew the same in the privacy of his office with no one present; that Mr. Bunker returned the following day and signed the will with no one present but the attesting witnesses; that he had known Mr. Bunker since 1928 and had attended to a considerable amount of legal business for him; that Frank Sylvester had been in the witness's office a number of times and might have been with Mr. Bunker on some of the occasions but, as stated, no one discussed the will or its preparation with the attorney except the testator himself.

Contestant used six witnesses and some documentary evidence. In addition to the contestant, who testified merely that the first date she knew the will was in existence was January 26, 1943, she offered her three daughters, her son-in-law, and a neighbor, J. B. Lockett, as witnesses. The testimony of her three daughters and her son-in-law can be summarized as follows: Testator had the "flu" in 1924 and complained of headaches from that time on, and as he grew older he complained of loss of memory. He could not recognize the grandchildren when they would come to see him but would remember them when they told him who they were. Lockett testified that the testator's eyesight was bad. Testator declared in the presence of his grandchildren in 1927 that he was giving each of them $1,000 and the rest of his property to their mother. In 1935 he named over his property to Mrs. Olive Davis, his granddaughter, and told her it was to be left to "Lizzie" (her mother). Mrs. Davis also testified that in 1941, testator again went over his property and told his daughter, "I am going to take care of this for you now and after my death it is all yours and you can do with it as you please." Similar declarations were made by testator in 1936 in the presence of Mrs. Agnes Bailey, another granddaughter, but witness could not state the exact time in 1936 the declarations were made. She admitted that testator drove a T Model Ford, paid his own bills, wrote his own checks, and attended to his own banking business.

Frank Sylvester moved to, and commenced farming the quarter section in question in 1934. Witness Roy Davis, husband of granddaughter Mrs. Olive Davis, told of an occurrence when Mr. Burgess, husband of contestant, deposited farm rent to Mr. Bunker's account in the bank and then went by to see Mr. Bunker. Mr. Bunker instructed him to leave the checks at the farm in the future and Frank (meaning proponent) would get them. "He is taking care of that part of my business," stated testator and further said that Frank always helped him figure the rent. Roy Davis further testified that there was no complaint of Burgess' farming before Sylvester moved on the place, but thereafter testator complained to witness about the way Burgess was farming the land. Witness saw Sylvester and Bunker looking at Burgess' crop in either 1936 or 1937, and they only looked at a twenty-acre patch which was the sorriest crop on the place. Later Bunker stated to witness that he and Frank had looked at the Burgess crop, had walked out a piece in the crop, and it did not look like he had anything much. The testimony further showed that the Sylvesters visited Bunker at his home in Vernon almost every Sunday and sometimes during the week.

J. B. Lockett, a neighbor, testified that Bunker complained to him in 1935 and 1936 about the way Burgess cultivated his crops. Witness stated there was little difference between the Burgess and the Sylvester crops. In 1938 Sylvester told witness it looked like the International people were going to take Burgess' tractor away from him; that the bank would not let him have the money to protect it unless Bunker would sign the note, and Mr. Bunker had told him he would not go on the note; that in the event Burgess did not get the money he, Sylvester, had the place rented and was going to work it.

Without detailing evidence offered by proponents, it showed that testator, though feeble, attended to his own banking business, drove his own car until about two years before his death, and looked after his affairs generally with frugal ideas and habits.

Nowhere does the evidence, except by mere suspicion and inference, connect the proponents with the will or the making of it. At best, it would be a surmise or an inference that proponents poisoned the mind of the testator against his son-in-law

and superimposed their influence upon the testator, and on that must be based the inference that, although testator went to the lawyer of his choice, one who had previously handled legal matters for him, gave personal directions concerning his will, and executed the same in the privacy of the lawyer's office with only disinterested attesting witnesses present, yet at the time of his giving of the directions and of executing the. will drawn according to such directions, he was obedient not to his own will but to the will of the proponents.

We hold that the evidence is insufficient to establish the fact of undue influence, that the trial court correctly disregarded the answer of the jury to the issue of undue influence, and that the trial court correctly overruled contestant's motion for judgment. Contestant's fourth, fifth, and sixth points of error are therefore overruled. Pierson v. Pierson, Tex.Civ.App., 57 S.W. 2d 633, writ refused; In re Bartels' Estate, Tex.Civ.App., 164 S.W. 859, writ refused.

By her seventh, eighth, and ninth points of error, contestant complains of the action of the trial court in withdrawing from the jury consideration of declarations of testator made to contestant's witnesses concerning what Frank Sylvester told testator about Burgess neglecting his crops and about contestant being in Vernon on a certain day (and being a day she did not visit her father). Witnesses were permitted to give in evidence declarations made to them by testator concerning his own physical condition and feelings, his own forgetfulness, his own ideas concerning the Burgess crops and the way they were being tended, and his own thoughts on many matters concerning his estate, but his declarations concerning what Frank Sylvester had told him about the crops and the way they were being cultivated by Burgess and that Frank Sylvester told him contestant was in town on a certain day (being a day she did not come to see testator) were withdrawn from the jury under objection that they were hearsay, that they served no issue in the lawsuit, were incompetent on the issues of undue influence and mental incapacity, and were highly prejudicial.

That the declarations were hearsay cannot be denied. In fact, all the declarations of the testator would be classed as hearsay. If admissible, they must be so under an exception to the hearsay rule, or under some other rule of evidence. The well-established rule is that declarations of a testator are not competent to prove the fact statements contained in the declarations. For example, declarations of a testator to the effect that he had made a will under undue influence are not admissible to prove the fact of undue influence. Scott v. Townsend, 106 Tex. 322, 166 S.W. 1138; Wigmore on Evidence, Second Edition, Section 1738. The only basis for the admissibility of evidence of declarations made by a testator is to shine the searchlight of investigation on the mental condition of the testator and to show such mental condition, if possible, by the character of statements which he has made.

"* * * these utterances may be nevertheless availed of as evidence of the testator's mental condition, if the latter fact is relevant. * * *.

The existence of undue influence or deception involves incidentally a consideration of the testator's incapacity to resist pressure and his susceptibility to deceit, whether in general or by a particular person. This requires a consideration of many circumstances, including his state of affections or dislike for particular persons, benefited or not benefited by the will; of his inclinations to obey or resist these persons; and, in general, of his mental and emotional condition with reference to its being affected by any of the persons concerned. All utterances and conduct, therefore, affording any indication of this sort of mental condition, are admissible, in order that from these the condition at various times (not too remote) may be used as the basis for inferring his condition at the time in issue." Wigmore on Evidence, supra.

The difficulty arises in distinguishing between this proper and legitimate use of such evidence and its improper use to prove, by the declaration itself, factum contained in the declaration. Court instructions limiting the use for which the evidence of such declarations may be considered by the jury are proper and oftentimes effective to circumvent improper application of the evidence. In some cases, however, even court instructions cannot be said to prevent the harm resulting from improper consideration of such evidence.

Analyzing the testimony that was withdrawn from the jury, it is confined to the declaration by the testator that Frank Sylvester had told him certain things about Burgess and Mrs. Burgess, which things

contestant contends were false. In other words, the necessary effect of this testimony would be to persuade the jury that Sylvester was making false statements to testator about Mr. and Mrs. Burgess, the inference being that this was part of a course of conduct on the part of the Sylvesters which resulted in undue influence on the testator in the re-drawing of his will. This then would necessarily amount to the establishment of an essential link in the circumstantial chain by the use of declarations of the testator. We doubt that any instruction by the court would prevent its use for that purpose by the jury. To use these declarations for such purpose would be improper. The line must be drawn somewhere, and we are of the opinion that the court correctly withdrew this third-hand testimony from the jury. In the light of the record and the jury's answer to the question of undue influence, it is probable that the instruction of the court to the jury not to consider the testimony for any purpose was without avail, and this demonstrates the danger of admitting such testimony for even a limited purpose. In other words, we feel that the probative force of the questioned testimony to show the mental condition of the testator, if indeed it throws any light on it at all, is so infinitesimal as compared with the weight such testimony would necessarily bear in proof of the factum of undue influence that the court was justified in taking it from the jury completely. Wigmore on Evidence, supra, citing Smith v. Keller, 205 N.Y. 39, 98 N.E. 214.

Contestant's seventh, eighth, and ninth points of error are therefore overruled.

■ By tenth point of error, contestant complains of the action of the trial court in refusing to admit proof of the testator's physical condition in 1942. The court held that the evidence of the physical condition of testator six years after he made the will in question was too remote. In Wigmore on Evidence, Second Edition, Section 233, we find the rule stated as follows: "There seems to be no agreed definition of the *limit of time* within which such prior or subsequent condition is to be considered; and in the nature of things no definition is possible. The circumstances of each case must furnish the varying criterion, and set determination of the trial judge ought to be allowed to control."

Even though admitted, the evidence of a lay witness concerning testator's physical condition six years after the date of the will could hardly have any probative value on the objective point of inquiry, that is, the state of mind at the precise date of the testamentary act. The action of the trial court in excluding the evidence on the ground of remoteness was justified. For example, in Howes v. Colburn, 165 Mass. 385, 43 N.E. 125, the trial court's limitation to a period from about eight years before the execution of the will to about two and one-half years thereafter was approved. We therefore overrule contestant's tenth point of error.

■ After the case reached the district court on appeal from the probate court, contestant filed amended pleadings and sought to raise the question of whether or not that portion of the will (quoted above) giving to Frank Sylvester and wife part of the land was intended as a contract for a conveyance of said property to Sylvester. Contestant excepted to the court's charge for failing to submit this issue to the jury and submitted a requested charge on the issue, which was refused. Contestant, in her eleventh and twelfth points of error, complains of the action of the trial court in refusing to submit such issue to the jury. These points are overruled. This being an appeal to the district court from the order of the county court admitting the will to probate, the jurisdiction of the district court was appellate only and was limited to such as the probate court could properly have exercised. Constitution, Article V, Section 8, Vernon's Ann.St.; Jones v. Sun Oil Co., 137 Tex. 353, 153 S.W.2d 571; Huston v. Cole, 139 Tex. 150, 162 S.W.2d 404, and authorities therein cited. See, also, Harris v. Harris' Estate, Tex.Civ.App., 276 S.W. 964.

Having overruled all of the points of error urged by contestant, we affirm the judgment of the trial court.

Judgment affirmed.