Gertrude Taylor BROOKS et al.

v.

**W. M. TAYLOR.**

No. 7159.

Court of Civil Appeals of Texas.

Amarillo.

June 18, 1962.

Rehearing Denied Sept. 4, 1962.

Cade & Bowlin, Thomas B. Duggan, Jr., Lubbock, for appellants.

Calloway Huffaker and Harold Green, Tahoka, for appellee.

DENTON, Chief Justice.

W. M. Taylor instituted this suit against Robert Marvin Taylor, Gertrude Taylor Brooks and husband H. F. Brooks, Bertha T. Molthan and husband Elmer Molthan, Ben F. Taylor and Alvin Taylor, to cancel and set aside a warranty deed executed by the said W. M. Taylor, on the ground of duress. The case was submitted to the jury on one special issue. In response to such issue the jury found W. M. Taylor's signature and acknowledgment on the deed in question had been obtained under duress. From a judgment entered canceling and setting aside the deed all defendants, with the exception of Robert Marvin Taylor, duly perfected this appeal.

This dispute concerns real estate owned by Charlie Taylor who died intestate on January 1, 1960. The defendants below were the brothers and sisters of Charlie Taylor and W. M. Taylor was the only surviving heir of James Abslum Taylor, deceased, also a brother of Charlie Taylor. It is undisputed the parties to this suit were the only heirs at law of Charlie Taylor who left an estate consisting of both real estate and personal property of the approximate value of $75,000.00. The net value of the estate was fairly evenly divided between the realty and the personal property.

The appellee alleged that on January 14, 1960, some two weeks after the death of Charlie Taylor, Ben F. Taylor advised him that he, W. M. Taylor, was not entitled to any part of Charlie Taylor's estate and that if he insisted upon any share of it the said W. M. Taylor would not live to enjoy it. Other threats and accusations made by the said Ben F. Taylor were also alleged. It is appellee's contention that by reason of these threats he executed the deed in question which conveyed his right, title and interest in all of the real estate to the defendants below in exchange for one-sixth of the personal property. A review of the record very clearly reveals that ill feelings were held by some members of the Taylor family toward their nephew, W. M. Taylor. He had at least two controversies with members of the family concerning the location of fence lines, and several members of the family felt W. M. had not shown the proper attention to his late grandmother Taylor during her last illness. This seems to be the background of the family dispute. This feeling, which apparently was shared by the deceased Charlie Taylor, was admittedly common knowledge within the family. Appellants denied the alleged threats and testified their attitude was that W. M. Taylor did not deserve any part of the estate. Their position is that his legal right to the property had not been questioned.

It is undisputed that on or about January 24, 1960 and subsequent to the discussion between W. M. and Ben F. Taylor on January 14, 1960, W. M. went to the home of his aunt, Gertrude Taylor Brooks, and made the proposition that he would accept one-sixth of the estate's personal property

as his share of the estate. Appellants contend the warranty deed executed by W. M. Taylor on February 8, 1960 merely carried out the offer proposed. It is undisputed that W. M. was tendered checks representing one-sixth of the personal property. Appellee contends he offered to accept this amount and did in fact execute the deed for fear of his life or bodily harm.

Appellants' first three points of error complain of the admission into evidence of testimony of a dispute between appellee and Charlie and Ben F. Taylor in the summer of 1958 over a fence line; admission of evidence of the dispute between appellee and Ben F. Taylor on April 26, 1960 and the admission of testimony of appellee's daughter to the effect Ben F. Taylor forced her car into a bar ditch in April, 1960. The first incident occurred some 18 months prior to the execution of the deed, and the latter two incidents took place some two months after the deed was signed. Appellants contended at the trial and on this appeal that testimony concerning the 1958 dispute was prejudicial and too remote and that the latter two occurrences took place after the deed was executed and was prejudicial and improper and could not "possibly constitute duress in the execution of the deed prior thereto on February 8, 1960." In order to pass upon these points, we deem it expedient to briefly review the nature of the cause of action sought to be proved, and the burden of proof.

■ Where a party seeks to avoid a deed on grounds of duress, duress has been defined as a condition of the mind produced by improper external pressure destroying the free agency of the grantor and inducing him to execute a conveyance not of his own volition. Prontzinski v. Baker, 364 Ill. 451, 4 N.E.2d 862. See also 26 C.J.S. Deeds § 61, page 757. Texas courts substantially follow this definition. Pfeuffer v. Haas, Tex.Civ.App., 55 S.W.2d 111, error dismissed. Obviously, in seeking to set aside the deed in question appellee had the burden of establishing his allegations of duress. The very nature of duress involves the state of mind of the person pleading it. What constitutes duress is a question of law, but whether a person acting voluntarily or as a result of duress is a fact issue to be determined by the jury. Brown v. Westerfeld, Tex.Civ.App., 129 S.W.2d 451, error dismissed, judgment correct. The law recognizes the difficulty encountered in proving a person's state of mind. Blanton v. Sherman Compress Co., Tex.Civ. App., 256 S.W.2d 884 (n. w. h.); Smith v. Jungkind, Tex.Civ.App., 252 S.W.2d 596, refused. In 20 Am.Jur., Sec. 345, page 320–321, the general rule is stated in the following language:

"Whenever issues of duress, undue influence, fraud, and good faith are raised, the evidence must take a rather wide range and may embrace all the facts and circumstances which go to make up the transaction, disclose its true character, explain the acts of the parties, and throw light on their objects and intentions. Such matters are ordinarily not the subject of direct proof, but to be inferred from the circumstances, and in all such cases, great latitude of proof is allowed and every fact or circumstance from which a legal inference of the fact in issue may be drawn is competent. * * * Evidence of subsequent acts between the parties which have a relevant bearing upon such issues is admissible."

■ After considering the nature of the cause of action sought to be proved together with the burden of proof placed on appellee, we are of the opinion the evidence under consideration was properly admitted for the consideration of the jury.

■ By the next two points of error appellants complain of the refusal of the trial court to submit appellants' requested Special issue and its accompanying definition of duress. The single issue which was submitted to the jury inquired whether

" * * * the signature and acknowledgment of W. M. Taylor on the deed in question was obtained under duress as that term is hereinabove defined." The issue was preceded by the following definition:

"The term 'Duress' as used in this Charge means: Any coercion of another, either mental, physical, or otherwise, causing him to act contrary to his own free will or to submit to a situation or condition against his own volition or interests. In other words, duress is the exercise of sufficient influence over another to destroy the free agency of the party influenced, and overcome his will to the extent that it will cause him to do that which he otherwise would not do."

The requested issue and definition differed from the ones given in the court's charge in that the requested issue and definition required duress to be the "sole and efficient" cause of appellee's execution of the deed. The issue and definition submitted by the court was essentially the same as that submitted in Bank of Fredericksburg v. Wendel, Tex.Civ.App., 11 S.W.2d 341 (dismissed), and Werner v. Brehm, Tex.Civ.App., 216 S.W.2d 991, (refused n. r. e.). See also Hailey v. Fenner & Beane, Tex.Civ.App., 246 S.W. 412 (n. w. h.); Pfeuffer v. Haas, supra; 21 Tex.Jur.2d page 115. Appellee based his cause of action on the single ground of duress. In our opinion this distinguishes the instant case from those relied on by appellants. We therefore conclude the special issue and the accompanying definition given by the trial court were proper submissions under the record in this case.

■ Appellants' next point of error is levelled at the failure of the trial court to grant their motion for a directed verdict. This involves the question of law of no evidence. No authorities need be cited for the well settled rule that in passing upon the law question of no evidence it is our duty to consider only the evidence which is favorable to the issue and disregard entirely all evidence which is adverse, contrary or conflicting to the favorable evidence.

■ Appellee testified that Ben F. Taylor told him that Charlie Taylor " * * * didn't want me to have any part of the estate and if I put in for any part of it he would kill me. I wouldn't live to enjoy it." This was corroborated by Marvin Taylor who testified his brother Ben F. Taylor told him he was going to stop fighting and "was going to start using bullets." Both appellee and Marvin Taylor testified that Ben F. Taylor was a person of violent temper. The testimony is uncontroverted that Ben F. Taylor was not present when appellee executed the deed, but was waiting in his automobile outside the court house in Plains, Texas, where it was signed. Appellee testified, "I knew Ben was outside and I was in fear of losing my life if I didn't sign these papers." Portions of appellee's testimony concerning the other controversies with Ben F. Taylor were also corroborated by his wife and daughter and his attorney's son who was present at the April, 1960 meeting between appellee and Ben F. Taylor at the latter's home. Even though it is clear appellee proposed the so-called "settlement" by originally agreeing to accept one-sixth of the estate's personal property as his share of the estate; that Ben F. Taylor obviously agreed to accept this proposal in spite of his assertions that appellee was not entitled to any of the estate; and that the said Ben F. Taylor was not physically present when the deed was executed, we are of the opinion and so hold there was evidence of duress. Appellants' sixth point of error is accordingly overruled.

■ Appellants' seventh point of error complains of the failure of the trial court to grant their motion for judgment non obstante veredicto on the ground the controlling issues were not submitted to the jury. The trial court may grant a judgment non obstante veredicto if a directed verdict would have been proper, and where a jury finding has no support in the evidence. Rule 301, Vernon's Ann.Texas Rule. What

we have said in connection with the preceding point and the points of error dealing with the special issue and definition submitted is applicable to this point of error under consideration, and the same is overruled.

In view of the disposition of this case we do not deem it necessary to discuss appellee's counterpoints which contend the deed in question is void or at least voidable because of a failure of consideration.

After carefully considering this entire record we are of the opinion it reflects no reversible error. The judgment of the trial court is affirmed.