Mamye **LAWLER** et al., Appellants,

v.

Phillip **SPEAKER** et al., Appellees.

No. 7921.

Court of Civil Appeals of Texas.

Amarillo.

Sept. 15, 1969.

Rehearing Denied Oct. 20, 1969.

McCown, Sheehan & Dubuque, Dumas, O. M. Stubblefield, Dallas, for appellants.

Bailey, Neathery, White & Cassell, and Robert A. Neathery, Dallas, Lovell, Lyle & Cobb and R. A. Renfer, Jr., Dumas, for appellees.

DENTON, Chief Justice.

Appellees' motion for rehearing is granted, and our former opinion is withdrawn and the following is substituted in lieu thereof.

This is a suit to cancel a general warranty deed on the ground of duress. On April 28, 1961, Martha Ann Speaker and husband W. O. Speaker executed and delivered a general warranty deed to Jack Speaker and Mamye Lura Lawler, conveying two tracts of land in Moore County, which was separate property of Martha Ann Speaker. The grantees were the son and daughter of the grantors and Phillip, Chris, Donna and David Speaker grandchildren of grantors and children of Huah Speaker, deceased son of the grantors. The case was submitted to the jury on two special issues. The jury found Martha Speaker had sufficient mental capacity to execute the deed; and that her signature and acknowledgment on the deed was obtained under duress by the two grantees. From a judgment cancelling and setting aside the deed, the defendants below have appealed.

The plaintiffs below pleaded the deed in question was void for the reasons the grantor lacked sufficient mental capacity to execute the deed; and that duress was exerted on the grantor in the following language: "That the defendants herein, Mamye Lawler and Jack R. Speaker, forced the said Martha Ann Speaker to execute the aforesaid deed by threatening to do her bodily harm if she did not execute said instrument," and "that at the time and on the occasion the purported deed was executed, the defendants conspired and entered into a conspiracy to coerce, defraud and over-reach their mother, Martha Ann Speaker, substituting their will for hers to make her execute the said instrument."

The second of the two special issues submitted the question of duress. The trial court defined duress as follows:

"The term duress as used in the foregoing Special Issue means a condition of

the mind produced by improper external pressure, coercion whether mental, physical or otherwise, causing the person to act contrary to his own will and to submit to a situation or condition not of his own volition. In other words, duress is the improper exercise of influence of another to the extent that it will cause such a person to execute a conveyance that he would not do otherwise."

■ No objection was made to this definition. Briefs for both the appellants and appellees treat the case as one to set aside the deed on the ground of undue influence rather than duress. All cases cited involve the issue of undue influence. The distinction between undue influence and duress is rather nebulous and unclear. As stated in 23 Am.Jur.2d Deeds, Section 148, p. 193: "Undue influence is distinguishable from duress in that undue influence is a more subtle domination of the grantor's will, especially by one who stands in a relation of confidence." The New Mexico Supreme Court, in Trigg v. Trigg, 37 N.M. 296, 22 P.2d 19, had this to say:

"In the general sense of the term, undue influence would seem to be a species of duress, or, if this be not quite accurate, the two would at least seem to run together so that the precise line where one begins and the other stops is not easily definable."

See also Coerced Land Conveyance—A Survey of Texas Law, 41 T.L.R. 569. They are both equitable doctrines which the courts apply to avoid contracts entered into as a result of coercion sufficient to overcome the free will of the grantor. As closely related as these two equitable doctrines may be they are not synonymous in the technical sense, however, they both are species of legal fraud. Bradshaw v. Seaton, 60 Tex.Civ.App. 278, 128 S.W. 943 (Writ.Ref.). The end result may be the same, that is, the alleged misconduct on the part of the grantee or transferee must have been sufficient to have overcome the free will of the grantor or transferor. 10

Tex.Jur.2d Cancellation of Instruments, Section 29 and Section 32. It is the manner or method of overcoming the free will that seems to be the real distinction between these two doctrines. "Duress is but the extreme of undue influence * * *." Commercial National Bank of Cleveland v. Wheelock, 52 Ohio St. 534, 40 N.E. 636. Under this record we have no alternative but to treat the case as one involving duress.

Appellants first contended there was no evidence to support the jury finding of duress. In reviewing the "no evidence" point, this Court is required to consider only the evidence that is favorable to the finding and disregard the evidence that is adverse and contrary, in concluding every legitimate conclusion which tends to uphold such finding. Truelove v. Truelove (Tex. Civ.App.), 266 S.W.2d 491 (Writ.Ref.). Curry v. Curry, 153 Tex. 421, 270 S.W.2d 208.

Martha Speaker and her husband had four children: Mamye Lawler and Jack Speaker, the grantees of the deed, Fred, and Huah, a deceased son. Phillip, Chris, Donna and David Speaker were the children of Huah. Phillip, now an adult, is a plaintiff in his own right. The other three children are minors and are represented by their mother, Lucille Speaker French as next friend. Mr. and Mrs. Speaker and all these parties resided in Dallas except Mrs. Lawler and her husband, Curtis Lawler, who resided in California. The Lawlers arrived in Dallas April 2, 1961 for a vacation and stayed in her parents' home until they left for California on April 30. The deed in controversy was executed by Martha Speaker and her husband on April 28, 1961, two days before the Lawlers departed. The age of Mrs. Speaker at the time the deed was executed is unclear from this record, but she undoubtedly was in her seventies. She was in poor health during this period and was under the treatment of Dr. Eugene Mason of Dallas. He testified he treated her 23 times in his office from October 17, 1960 to April 8, 1963. He

made a diagnosis of "arteriosclerotic cardiovascular disease with congestive circulatory failure and auricular fibrillation." In addition, nutritional deficiency was suspected. A sister of Mrs. Speaker gave the doctor a history of Mrs. Speaker becoming forgetful and unable to think clearly at times. Dr. Mason noted improvement in her condition during her visits in March and April of 1961. However, the jury found she had sufficient mental capability to execute the deed and that question is not before us.

The Lawlers spent the entire twenty-eight days in her parents' home. There is evidence Mrs. Lawler forbade Mrs. Speaker's grandchildren to visit her during this stay. Most of the evidence concerning Mrs. Speaker's state of mind, health, and the circumstances and events occurring during this period was the testimony of Lucille Speaker French, wife of the deceased son, Huah, and mother of his children. She testified she visited the Speaker home on several occasions during the Lawler visit, while the Lawlers denied she visited at all during this period. It seems to be undisputed Mrs. French did not attend an anniversary dinner for the Speakers during this period even though she was invited.

According to Mrs. French, things were not tranquil in the Speaker household during the Lawler visit. She testified she heard Mrs. Lawler tell Mrs. Speaker "they were going to take over, her and Jack Speaker, were going to take over everything." Mrs. Speaker replied "Oh, no you're not, and she was arguing with her, they argued with for several weeks." She testified that Mrs. Speaker later told Mrs. French "Oh, Lucille, they have taken my land away."

Mrs. French's son, Chris had had an accident while riding his motorcycle. A damage suit was filed on April 14, 1961 against him along with his mother and Mr. and Mrs. W. O. Speaker. In this connection, Mrs. French testified: "I heard Jack Speaker and Mamye tell her she was going to sign that over to them or she was liable to get everything she had taken away from them, that boy, on account of Chris having that motorcycle wreck, was going to take everything she had and they were going to get it out of her name and sign it over." Mr. and Mrs. Speaker were subsequently dismissed from this suit, but the record does not show when this occurred. On another occasion, Mrs. French testified that Mrs. Lawler "called me up one day while I was at my mother's and told me Chris had some clothes over there and she wanted them kept out of the house and for us to keep the hell away from there."

The evidence surrounding the execution of the deed on April 28, 1961 is unclear. Mrs. Jack Speaker testified: "My husband, Jack Speaker, his sister, Mamye Lawler, Curtis Lawler, my brother-in-law, Mrs. W. O. Speaker" went to town on the day the deed was executed. The deed also bore the signature of Mr. Speaker, so it is presumed he was also present. She did not see the deed, but upon their return Mrs. Speaker told her "I have just deeded everything over to Jack and Mamye." The deed was executed in the office of an attorney who had been previously employed by Mr. and Mrs. Speaker on other matters. The attorney's secretary, who notarized the deed, testified by deposition. She recalled the incident but could not remember the details of the execution other than she explained the deed to Mrs. Speaker, and that she would have remembered if something unusual had occurred. Two days after the deed was executed, the Lawlers left Dallas for their home in California by way of Dumas, Texas, and filed the deed of record there on May 3, 1961. Mrs. Speaker died on January 12, 1965, over 3½ years after the deed was executed.

 When a party seeks to avoid a deed on grounds of duress, the true test is whether the will of the grantor of the deed is overcome by wrongful threats, inducing him to do an act which he would otherwise not have done and which he was not bound to do. Bumgardner v. Corey, 124 W.Va.

373, 21 S.E.2d 360. Duress has been defined as a condition of the mind produced by improper external pressure destroying the free agency of the grantor and inducing him to execute a conveyance not of his own volition. Brooks v. Taylor (Tex.Civ. App.), 359 S.W.2d 539 (Ref. N.R.E.) Pfeuffer v. Haas (Tex.Civ.App.), 55 S.W.2d 111 (Error Dis.). Appellees, plaintiffs below, had the burden of establishing the allegation of duress.

The necessary elements of duress are unlawful threats or coercion and that the exertion of such threats or coercion was sufficient to preclude the person from exercising his own free will. Duress, as well as undue influence, involves, the state of mind of the grantor or transferor. What constitutes duress is a matter of law, but whether duress exists in a particular situation is generally a fact issue. Pierce v. Estate of Haverlah (Tex.Civ.App.), 428 S.W.2d 422 (Ref. N.R.E.). Brooks v. Taylor, supra.

The only direct testimony that could be said to constitute coercion or threats exerted upon Mrs. Speaker was the testimony of Mrs. French. She testified Mrs. Lawler and Jack Speaker told Mrs. Speaker "they were going to take over everything" and that these two told Mrs. Speaker "she was going to sign that over to them or she was liable to get everything she had taken away from them" on account of the damage suit filed against Mrs. Speaker's grandson and the Speakers. The establishment of duress may be proved by circumstantial evidence as well as direct evidence. The fact the Lawlers had the opportunity to exert duress is not in itself controlling. Burgess v. Sylvester (Tex. Civ.App.), 177 S.W.2d 271, affirmed 143 Tex. 25, 182 S.W.2d 358. It must not only be shown that there was an opportunity to exert duress, but there must be evidence, direct or circumstantial, to show duress was exerted and that it was exerted at the time of the transaction to such an extent to preclude the free will or judgment of

the grantor. Werner v. Brehm (Tex.Civ. App.), 216 S.W.2d 991 (Ref. N.R.E.).

When the evidence is considered by this Court in the manner the law requires, we conclude there was evidence of probative force to support the jury verdict of duress.

In determining appellants' contention the jury finding of duress is against the great weight and preponderance of the evidence, we must consider all the evidence which supports the finding, and that which does not. Aside from the evidence briefly summarized above, the appellants offered contradictory evidence as to Mrs. Speaker's health and state of mind. The record is void of evidence which tends to contradict the testimony of Mrs. French, her son, and others relative to the actions and relationship between the appellants and Mrs. Speaker during the period prior to the execution of the deed. Before we can set aside jury findings as being insufficiently supported by the evidence, the findings must be so contrary to the overwhelming weight and preponderance of the evidence as to be manifestly unjust and wrong. Continental Bus System v. Biggers (Tex. Civ.App.), 322 S.W.2d 1 (Ref. N.R.E.). In appraising all of the evidence, we are unable to say the jury finding of duress is so contrary to the overwhelming weight and preponderance of the evidence as to be manifestly unjust and clearly wrong.

Appellants next complain of the trial court's action in excluding a portion of the testimony of Myrtle Bauerie regarding the facts surrounding the execution of the deed in question. Inasmuch as appellants' motion for new trial failed to complain of the trial court's action in excluding this testimony, the point cannot be considered on appeal. Marek v. Baylor County (Tex.Civ.App.), 430 S.W.2d 220 (Ref. N.R.E.) ; Rule 374 Texas Rules of Civil Procedure.

Appellants next contend that Lucille Speaker French was incompetent to

testify regarding her transactions with the grantor under Article 3716 Vernon's Ann. Civ.St., commonly called the Dead Man's Statute. Mrs. French filed this suit as next friend of her three minor sons. The Commission of Appeals approved the following definition of "next friend": "One who, without being regularly appointed guardian, acts for the benefit of an infant, married woman, or other person not sui juris." Latcholia v. Texas Employers Insurance Association, 140 Tex. 231, 167 S. W.2d 164 (opinion adopted). Mrs. French had no actual claim or interest in the subject matter of this suit. In our opinion, she was competent to testify to her transaction with the deceased grantor. Ragsdale v. Ragsdale, 142 Tex. 476, 179 S.W.2d 291.

The judgment of the trial Court is affirmed.