**Sarah Boyd RANSOM, Appellant,**

v.

**Lorine ISELT et al., Appellees.**

**No. 5034.**

Court of Civil Appeals of Texas,
Eastland.

July 14, 1977.

Rehearing Denied Aug. 11, 1977.

Allan I. Schneider, Giddings, Robert E. Perman, Smithville, for appellant.

Ralph A. Rash, Kuhn, Collins & Rash, Austin, for appellees.

McCLOUD, Chief Justice.

This is a will contest case wherein contestants, Lorine Iselt and Carolyn Dube, alleged that testator, George Brade, was acting under undue influence and lacked testamentary capacity when he executed his will dated August 28, 1975. The jury found that George Brade had testamentary capacity but that the making and executing of the instrument was procured by undue influence on the part of proponent, Sarah Boyd Ransom. Judgment was entered denying probate. Proponent, Sarah Boyd Ransom, has appealed. We reverse and render.

Contestants are the two daughters of George Brade. Proponent started dating Mr. Brade in 1974. Mrs. Luke Turner testified that she visited with Mr. Brade and proponent in September, 1975, and on that occasion Mr. Brade referred to proponent as his wife. They were never married, but proponent testified that she and Mr. Brade had on various occasions discussed marriage and they planned to marry "after Christmas." Dr. Robert Burns testified that Mr. Brade was "very depressed" around August and September of 1975. Mr. Brade died in December, 1975.

The rules to be followed are discussed in *Rothermel v. Duncan,* 369 S.W.2d 917, 922 (Tex.1963):

". . . Thus, before a testament may be set aside on the grounds of undue influence the contestant must prove: (1) the existence and exertion of an influence; (2) the effective operation of such influence so as to subvert or overpower the mind of the testator at the time of the execution of the testament; and (3) the execution of a testament which the maker thereof would not have executed but for such influence. See: *Stewart v. Miller,* Tex.Civ.App. (1925), 271 S.W. 311, wr. refused; *Olds v. Traylor,* Tex.Civ.App. (1944), 180 S.W.2d 511, wr. refused.

The burden of proving undue influence is upon the party contesting its execution. It is, therefore, necessary for the contestant to introduce some tangible and satisfactory proof of the existence of each of the above stated elements of undue influence. *Scott v. Townsend,* 106 Tex. 322, 166 S.W. 1138."

Proponent contends there is no evidence to support the jury finding that the will was procured by undue influence on her part. We agree.

In considering this "no evidence" point, we will consider only the evidence and inferences which tend to support the jury finding under attack and disregard all evidence and inferences that would lead to a contrary finding. *Martinez v. Delta Brands, Inc.,* 515 S.W.2d 263 (Tex.1974).

The will in question was signed by the decedent in the presence of Henry Harmes and Milton Brosch, officers of the Citizens State Bank, who signed the will as witnesses and who had known Mr. Brade for many years as a customer of the bank. The proponent was not present when the will was executed.

The will was prepared by the decedent's regular attorney, Michael Simmang, who testified that the will was prepared at the direction of Mr. Brade. He stated that proponent, Sarah Ransom, was not present when the will was prepared and she in no way told the attorney how the will was to be written. The attorney was not present when the will was executed.

Simmang stated that at the time he was preparing the will, Mr. Brade generally knew the nature and extent of his property; knew his two children and those who would have a natural claim on his bounty; and, knew that he was signing a will. Contestants rely upon the following testimony given by Simmang:

"Q. Okay. Do you think that by this last instrument we're talking about that's involved in this lawsuit, at the time you discussed the matter with him he understood the disposition of his property?

A. No, sir, I don't.

Q. On what do you base this conclusion?

A. I base it upon the fact when I discussed it with him the first time he wasn't sure of Mrs. Ransom's name.

Q. At any time during your discussion with Mr. Brade, in other words, the only reason you're basing your opinion that he didn't understand the disposition of his property, based on his statement to you he didn't know the correct spelling of the lady's name?

A. Well, not only that, when we discussed this—

Q. Uh-huh.

A. —evidently Mr. Brade had been consulting with another attorney. Later, I demised that this was probably a Roy Martin. Mr. Brade picked up this Will from the office, and I don't recall whether he got it from me or got it from my secretary, but at any rate it was picked up and was not signed and was not witnessed; and then several days later he brought it back with a handwritten note on a piece of paper that it looked like was torn off the bottom of the sheet,—

Q. Uh-huh.

A. —with certain corrections that I was to make in the Will. Namely, I was to add, I think, Mrs. Ransom's son, in the event that she preceded Mr. Brade. This note was signed by Roy Martin, and at that time I absolutely refused to have anything further to do with it; and I never saw it again until after Mr. Brade's death, and we went, I think with Mr. Durrow at the Citizens State Bank and got it out of his box, because the Will did name me as Executor."

The attorney's testimony discloses that the will was not signed when Mr. Brade picked it up, but his testimony is silent as to whether it was signed when Mr. Brade brought it back with the "handwritten note."

Roy Martin, an attorney in Austin, Texas, who had represented Sarah Ransom in the past, stated that he first got acquainted with Mr. Brade at Sarah's tavern or hamburger stand. He said that on one occasion while he and Mr. Brade were talking, Mr. Brade asked him to look over his will which he said had been prepared by somebody in Giddings. Martin testified he looked at it and "didn't like it." He testified he didn't remember the name of the lawyer who had written the will, but he wrote a note to him

and made two or three suggestions. He said his suggestions dealt with the mechanics of the will. They were not to change "who he gave the property to or anything like that." He remembered that he suggested the will be made a self-proved will, and suggested other "mostly mechanical things." He testified that when George Brade showed him the will it had been executed. On cross-examination, Martin stated that it was possible that Sarah Ransom handed him the will. He said he did not think she was the one that had it, but he could be mistaken. Martin's "handwritten note" was introduced in evidence. The note suggested: (1) in case of Sarah's death, the property should go to her son; (2) will should be made self-proved; and, (3) witnesses should give addresses.

Sarah Ransom testified that Mr. Brade left a will with her and she asked him if she could show it to a lawyer. She showed it to Roy Martin. Martin and Mr. Brade "talked" about it at her place. This occurred in September and the will had been signed at that time. She stated she had no knowledge of the will whatsoever until it was shown to her by Mr. Brade. She said she had nothing to do with the preparation of the will.

The jury could disregard the testimony of Sarah Ransom and her attorney, Roy Martin, that when they first saw the will it was executed. The jury could not, however, properly find the converse of their testimony when there was no independent evidence to support such finding. *Briscoe v. Laminack Tire Service, Inc.,* 546 S.W.2d 695 (Tex.Civ.App.—Texarkana 1977, writ ref. n.r.e.). The testimony by the attorney who drew the will that "evidently Mr. Brade had been consulting with another attorney," who he later "demised" was "probably a Roy Martin," is no evidence that Martin was discussing the preparation of the will with Mr. Brade before the will was signed.

■ Contestants have merely shown that proponent had an opportunity to exert influence upon Mr. Blade. Our Supreme Court in *Estate of Woods,* 542 S.W.2d 845, 848 (Tex.1976) recently said:

". . . It is not enough to show that proponents had ample opportunity to exert influence upon Mr. Woods as to the execution of the instruments. This Court said in *Rothermel:*

'. . . It is the law in Texas that a will cannot be set aside on proof of facts which at the most do no more than show an opportunity to exercise influence. *Burgess v. Sylvester,* Tex. Civ.App. (1944), 177 S.W.2d 271; affirmed, 143 Tex. 25, 182 S.W.2d 358. The establishment of the circumstances of having an opportunity to exert such influence due to being in a position of caring for the person upon whom the influence is supposed to be exerted is equally consistent with the theory of innocence as it is with the theory of wrongdoing. *Price v. Taliaferro,* Tex. Civ.App. (1952), 254 S.W.2d 157, wr. ref. n.r.e. The exertion of influence that was undue cannot be inferred alone from opportunity, but there must be some testimony, direct or circumstantial, to show that influence was not only present but that it was in fact exerted with respect to the making of the testament itself.' "

The record in this case shows that the will in question was prepared by Mr. Brade's regular attorney. It was executed by Mr. Brade. Proponent was not present when it was prepared or executed. Some suggestions were made by Roy Martin, proponent's attorney, after the will was executed. The suggestions were not complied with and the will was filed for probate as initially prepared by Mr. Brade's attorney. Contestants have failed to meet the test announced in *Rothermel* and *Estate of Woods.*

We hold there is no evidence to support the jury's finding that the will in question was procured by undue influence of Sarah Ransom.

The judgment of the trial court is reversed and rendered.