Jan Iona **RUST** et al., Appellants,

v.

Thomas E. **CHILDRE**, Appellee.

No. 15975.

Court of Civil Appeals of Texas, San Antonio.

Sept. 13, 1978.

Rehearing Denied Oct. 11, 1978.

Levey & Goldstein, San Antonio, for appellants.

William H. Price, San Antonio, for appellee.

## OPINION

KLINGEMAN, Justice.

This is an appeal from a judgment of the County Court of Bexar County, Texas, In Probate, setting aside and holding for naught a previous order of such court probating a will of Mary Elizabeth Brennan Childre, dated December 6, 1976. Appellee Thomas E. Childre contested said will both on the grounds of lack of testamentary capacity and undue influence, but, on trial, only the issue of undue influence was submitted. Trial was to a jury, who in answer to˙ the only special issue submitted, found that Mary Elizabeth Childre at the time she executed the will dated December 6, 1976, was acting under the undue influence of proponents Jan Iona Childre Rust or Pauline Brennan Burris. Appellants filed a motion for judgment non obstante veredicto which was overruled by the court and judgment was entered by the trial court setting aside and holding for naught the purported will of Mary Elizabeth Brennan Childre, dated December 6, 1976. Appellants will sometimes be hereinafter referred to as proponents and appellee will sometimes hereinafter be referred to as contestant.

By two points of error, appellants contend (1) there is no evidence of any undue influence being exerted upon the testatrix in the execution of such will by appellants, and (2) the jury's answer to the special issue on undue influence was against the great weight and preponderance of the evidence.

The applicable rule in these types of cases is set forth in *Rothermel v. Duncan*, 369 S.W.2d 917 (Tex.1963), as follows:

> Thus, before a testament may be set aside on the grounds of undue influence the contestant must prove: (1) the existence and exertion of an influence; (2) the effective operation of such influence so as to subvert or overpower the mind of the testator at the time of the execution of the testament; and (3) the execution of a testament which the maker thereof would not have executed but for such influence. See: *Stewart v. Miller*, Tex. Civ.App. (1925) 271 S.W. 311, wr. refused; *Olds v. Traylor*, Tex.Civ.App. (1944) 180 S.W.2d 511, wr. refused.

> The burden of proving undue influence is upon the party contesting its execution. It is, therefore, necessary for the contestant to introduce some tangible and satisfactory proof of the existence of each of the above stated elements of undue influence. *Scott v. Townsend*, 106 Tex. 322, 166 S.W. 1138.

See also *Estate of Woods*, 542 S.W.2d 845 (Tex.1976); *Pearce v. Cross*, 414 S.W.2d 457 (Tex.1966); *Boyer v. Pool*, 154 Tex. 586, 280 S.W.2d 564 (1955).

We have carefully reviewed the entire record. We find no evidence, circumstantial or otherwise,.of the existence and operation of any undue influence on testatrix, Mary Elizabeth Brennan Childre at the time of the execution of the will. The most that can be said of the evidence favorable to the contestant in this case is that circumstantially it supports one element of undue influence—the existence of an opportunity on the part of appellants to exert an influence on Mrs. Childre. This alone is not sufficient.

The testatrix, Mary Elizabeth Brennan Childre, was the wife of Thomas E. Childre, appellee here. Appellant Pauline Burris is a sister of testatrix, and appellant Jan Iona

Rust is a daughter of appellee by a previous marriage and a stepdaughter of testatrix and was raised in the home of the Childres. The will here involved is dated December 6, 1976, witnessed by three witnesses and contains a self-proving affidavit or certificate. Jan Iona Rust was named Independent Executrix in such will, and the will made devises as follows: (a) to her husband, Thomas E. Childre, all the proceeds of her checking account and a life estate in any real estate owned by her at her death, with remainder to Jan Iona Rust; (b) to her brother and sisters her undivided interest in a mineral interest in a tract of land in Live Oak County, Texas; (c) all the rest and residue of her property to Jan Iona Rust.

Dates of some significance, some of which are approximate, may be summarized as follows:

(a) April 20, 1944—appellee and testatrix were married. At such time, Mr. Childre had three children: two boys approximately 12 and 15 years old, and a girl, Jan Iona, who was very young;

(b) November 12, 1955—Mary Elizabeth Childre executed a will;

(c) October 1969—Mary Elizabeth Childre filed suit for divorce against Thomas E. Childre;

(d) September–November 1976—Donald Gene Childre, a son of Thomas E. Childre by the former marriage, came to live with the Childres while he was recuperating from an illness;

(e) November 30, 1976–December 6, 1976—Mary Elizabeth Childre was hospitalized at the Nix Hospital, San Antonio, Texas;

(f) December 6, 1976—Mary Elizabeth Childre's second will was executed upon release from the hospital;

(g) December 6, 1976–January 6, 1977—Mary Elizabeth Childre was at the home of Jan Iona Rust at Canyon Lake;

(h) January 6, 1977—Mary Elizabeth Childre went to Houston to be with her brother and sisters;

(i) January 1977—suit for divorce was filed by Mary Elizabeth Childre against her husband, Thomas E. Childre;

(j) February 8, 1977—Mary Elizabeth Childre died at St. Luke's Hospital in Houston;

(k) February 9, 1977—the body of Mary Elizabeth Childre was returned to San Antonio upon request of Thomas E. Childre over objections of her brother and sisters; and

(l) February 11, 1977—funeral services for Mrs. Childre were held in San Antonio.

Testatrix had no natural children of her own. It is clear from the record that the testatrix and Jan Iona Rust had a very close relationship. The brother of Thomas E. Childre testified that when Thomas Childre and testatrix were married that Jan was a very young girl, and the boys were older; that the boys were soon able to get out on their own and that Mrs. Childre was very devoted to Jan. Such brother also testified that Mrs. Childre and Donald Gene, the younger son, had numerous problems and that on occasions Thomas Childre and Donald Gene had some problems; that the older son has not been heard from for a number of years; that over a period of years the relationship between testatrix and her stepdaughter was as close a relationship as one could have between a mother and daughter. He also testified that the relationship between Mr. and Mrs. Childre was good but that he was aware of the fact that they had been separated for a period of time in 1969, and that Mrs. Childre had filed a suit for divorce.

Numerous other witnesses testified to the close relationship between Jan Iona Rust and Mrs. Childre and there was also testimony that the relationship between Mr. and Mrs. Childre was good. There is testimony of difficulties between Mrs. Childre and Donald Gene, and also some testimony as to difficulties between Mr. Childre and Donald Gene, including testimony that on one occasion they had a fight.

There is considerable testimony as to Mrs. Childre's physical and mental condition. It is clear that she was old and had been sick for a number of years. Although her testamentary capacity is not an issue here, the

testimony heavily preponderates that she was of sound mind.

Dr. Wagner, Mrs. Childre's doctor, testified that Mrs. Childre had rheumatic heart disease which he classified as a "bad heart disease"; that her death could have come at any time and he would not have been surprised. The official cause of her death was acute myocardial infarction. In 1976, she had a Pacemaker installed at the Nix Hospital. He testified that she had been taking a variety of medications over a period of years. He stated that in the 4½ years he treated Mrs. Childre he had never noticed any mental deficiencies or any mental impairment; that even with her medical problems she could not be easily led.

The will was prepared by Mr. Kellogg L. O'Connor, an attorney in a law firm in San Antonio. He testified that he first met Mrs. Childre through a telephone call which he understood was placed by her sister, Mrs. Burris; that Mrs. Burris told him that her sister wanted to make a will; and that Mrs. Childre was then put on the phone and told him she was in the Nix Hospital and wanted to make a will; that he talked to her several times over a period of days with regard to the making of such will; that he then prepared the will as requested and arranged to meet Mrs. Childre at her room at the hospital; that accompanied by his secretary he went to the hospital and discussed the contents of such will and its effect with Mrs. Childre; that there was no one in the room except Mrs. Childre and his secretary; that Mrs. Childre approved the will which was in conformity with what she had previously told him over the phone.

Mr. O'Connor testified that some difficulty was encountered with regard to the execution of the will, due in part to the hospital policy which forbade hospital employees serving as witnesses and also some reluctance on Mrs. Childre's part to having the will executed in a hospital; that he then suggested that the execution of the will be postponed until she was out of the hospital, to which suggestion Mrs. Childre agreed. He said that when Mrs. Childre came to the law office, he was out of the office and another attorney in the firm supervised the execution of the will.

He testified that at the time he prepared the will the testatrix was mentally and emotionally sound and had the testamentary capacity to make a will, understood the nature and extent of her property and the natural objects of her bounty. He testified that he got his information as to the provisions of the will from Mrs. Childre alone and no one else.

The will was executed before Mr. Steven Mark Gross, another attorney in the same firm. He testified in detail as to the execution of the will; that he questioned Mrs. Childre as to her intent to make such will and as to whether she wanted to sign the instrument; that such will was executed with all the formalities and solemnities required by law; that she gave every evidence of being of sound mind at the time of the execution of such will and of voluntarily signing such will.

All of the witnesses to the will and the notary who took the self-proving certificate testified. The gist of their testimony is that the testatrix read and was explained the will and approved it; that she was of sound mind; that no one exerted any influence on her at such time in connection with such will; that no one forced her to sign the will; and that such will was executed with the proper formalities. It is undisputed that both Mrs. Rust and her daughter, Suzanne Bangs, were present at the time of the execution of the will and that the testatrix, Mrs. Rust and Mrs. Bangs went directly from the hospital to the lawyers' office for the execution of the will. Mrs. Bangs testified that while leaving the hospital, Mr. Childre came up and started a ruckus and that Mrs. Childre then said "Jan, take me to the lawyer's office because I do not want anything to happen." There is no testimony indicating that they took any part in the discussion surrounding the execution of the will.

There is other testimony, none of which is particularly material as to the matter of undue influence. There is considerable testimony about the two divorce proceedings;

there is testimony as to problems between testatrix and Donald Gene Childre, and some testimony that Mrs. Childre was afraid that Donald Gene would manage to control and take over any property which his father was given, which she didn't want to happen. There was testimony that Mrs. Childre went to Jan Rust's home because she was afraid to return to her home because of Donald Gene, and other testimony that her doctor advised that she be taken to Jan's house.

 It is the law in Texas that a will cannot be set aside on proof of facts which at most do no more than show an opportunity to exercise influence. *Burgess v. Sylvester* (Tex.Civ.App.—Amarillo) 177 S.W.2d 271, *aff'd*, 143 Tex. 25, 182 S.W.2d 358 (1944). The exertion of influence that was undue cannot be inferred alone from opportunity, but there must be some testimony, direct or circumstantial, to show that the influence was not only present but that it was in fact exerted with respect to the making of the testament itself. *Estate of Woods, supra.*

In *Boyer v. Pool, supra*, in which there was evidence of contestant's opportunity to exert influence on the testator, the court said:

> Contestants must go forward and prove in some fashion that the will as written resulted from the daughters [proponents] substituting their mind and will for that of the testator. Here the will and the circumstances raise suspicion but it does not supply proof of the vital facts of undue influence—the substitution of a plan of testamentary disposition by another as the will of the testator.

 Here, there is no evidence that either of the proponents suggested what should be written into the will; that they in any way forced Mrs. Childre to prepare the will involved or to sign the will; and no evidence to show that any of the proponents exercised any influence whatsoever on Mrs. Childre with regard to the execution of the will.

As hereinbefore stated, we find no evidence that at the time of the execution of the will in question either the proponents or anyone else used his or her influence so as to subvert or overpower the mind of the testatrix or so as to substitute the plan of testamentary disposition of another as the will of the testatrix.

The judgment of the trial court is reversed and judgment here rendered probating the will of December 6, 1976, as the last will and testament of Mary Elizabeth Childre.